IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| JAMES MAYS, III, | ) |
| | ) |
|     Petitioner, | ) |
| | ) |
| v. | )     Case No. 2:23-cv-02506-SHL-atc |
| | ) |
| F.J. BOWERS, | ) |
| | ) |
|     Respondent. | ) |

**ORDER DENYING PETITIONER'S MOTION FOR DEFAULT JUDGMENT, GRANTING RESPONDENT'S MOTION TO DISMISS, DISMISSING § 2241 PETITION, CERTIFYING APPEAL WOULD NOT BE TAKEN IN GOOD FAITH, AND DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Before the Court is the *pro* se Petition for Writ of Habeas Corpus, requesting relief under 28 U.S.C. § 2241 ("§ 2241 Petition"), filed by Petitioner James Mays, III, Bureau of Prison ("BOP") register number 36650-001, an inmate at the Federal Correctional Institution Memphis Satellite Prison Camp ("FCI Memphis SPC") in Millington, Tennessee. (ECF No. 1.) Petitioner paid the habeas filing fee. (ECF No. 4.) Petitioner also filed a Motion for Default Judgment (ECF No. 6), to which Respondent Warden F.J. Bowers responded (ECF No. 10). On February 9, 2024, Respondent filed a Motion to Dismiss or, in the Alternative, for Summary Judgment ("Motion to Dismiss"). (ECF No. 13.) Petitioner filed a response. (ECF No. 16.) Respondent filed a reply. (ECF No. 19.) On June 11, 2024, Petitioner filed a motion for an extension of time to file a sur-reply. (ECF No. 21.)[1]

---

[1] On June 27, 2024, the Court entered an Order that, among other things, denied Mays's motion for an extension of time to file a sur-reply. (ECF No. 23.) The Court noted that Mays had not sought leave to file the sur-reply and allowed that he could move to do so within seven days of having been served with the reply from Bowers. (*Id.* at PageID 184.) The same day the Court entered the Order, Bowers filed a notice of service, indicating he "mailed a copy of the reply and

For the reasons that follow, the Court **DENIES** Petitioner's Motion for Default Judgment.  The Court **GRANTS** Respondent's Motion to Dismiss and **DISMISSES** the § 2241 Petition for lack of subject matter jurisdiction.

## I. BACKGROUND

Mays pleaded guilty and was convicted in the United States District Court for the Northern District of Alabama of conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349; health care fraud, in violation of 18 U.S.C. § 1347; and spending proceeds of health care fraud, in violation of 18 U.S.C. § 1957.  *United States v. Mays*, No. 6:19-cr-00219-LSC-SGC-4, Doc. 315 (N.D. Ala. Apr. 29, 2021).  He was sentenced to 102 months in prison, to be followed by a three-year term of supervised release.  *Id*.  He did not file a direct appeal.

## II. THE § 2241 PETITION

On August 11, 2023, Mays filed his § 2241 Petition alleging due process and equal protection claims based on his request for home confinement under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Public Law No. 116-136.  (ECF No. 1.)  He alleges that he first requested CARES Act placement on August 18, 2022.  (*Id*. at PageID 2.)  The Case Manager at FCI Memphis SPC, Officer Sanford, referred Petitioner to Unit Manager Smith, who allegedly told Petitioner that he would not be eligible for CARES Act placement until after he served 25% of his sentence, which would be in March 2023.  (*Id*.)  Petitioner alleges that if the BOP had correctly applied his earned time credits under the First Step Act ("FSA"), he would have already met the threshold for consideration for CARES Act placement.  (*Id*. at PageID 2–3.)

---

its accompanying exhibits to Petitioner's new mailing address . . . on June 25, 2024."  (ECF No. 24 at PageID 185.)  Mays did not move to file a sur-reply and his time to do so has passed.

Mays alleges that he never received a response to his "repeated inquiries" about the status of his eligibility for CARES Act placement. (*Id*. at PageID 3.) He filed an informal grievance in December 2022, and indicated that a Counselor Heaston called Smith to inquire about Petitioner's eligibility for CARES Act placement. (*Id*.) Petitioner alleges that Smith "assured [him] that his CARES Act application would be submitted when he reached 25% of his sentence." (*Id*.) Smith then allegedly "strongly advised" Petitioner not to file a formal administrative grievance. (*Id*. at PageID 3–4.)

On March 5, 2023, Sanford informed Mays about a BOP Memorandum that would allow inmates like him to be considered for CARES Act placement even though they had not completed 25% of their sentences. (*Id*. at PageID 4.) The same day, Mays submitted an Inmate Request to Staff, requesting consideration for CARES Act placement. (ECF No. 1-5.) Petitioner alleges that Unit Manager Hardy "verbally refused to submit the paperwork for review." (*Id*. at PageID 4.)

On April 16, 2023, Petitioner met with Smith and again discussed his eligibility for CARES Act placement. (*Id*.) Smith allegedly told Petitioner that "he would instruct Sanford and . . . Hardy to submit Petitioner's CARES Act application." (*Id*.) Petitioner followed up with Sanford on April 23, 2023, and Sanford allegedly emailed Smith that "he was prepared to submit Petitioner's CARES Act packet for review." (*Id*. at PageID 5.)

Smith replied to Sanford's email and advised that "only inmates who had served 50% of their sentence[s]" would have their CARES Act applications submitted to the Residential Re-Entry Manager ("RRM") for review and consideration. (*Id*.) According to Petitioner, the FCI Memphis SPC's local policy contradicts the CARES Act and the policies promulgated by the Department of Justice ("DOJ"). (*Id*.)

3

On May 1, 2023, Unit Manager Hardy informed Mays that the FCI Memphis SPC had reversed its local policy and would be submitting Petitioner's CARES Act packet to the RRM for consideration. (*Id*.) Mays signed his application for CARES Act placement on May 9, 2023 (*id*.), and submitted the application on May 11, 2023, which Mays asserts was the deadline for consideration. (*Id*. at PageID 6.) Mays alleges that his medical records were not uploaded until after the deadline, on May 14, 2023. (*Id*. at PageID 6.) Unit Manager Hardy did not sign off on the packet until two days later. (*Id*.) Warden Bowers signed off three days after Hardy and submitted Petitioner's packet to the RRM for review on May 19, 2023. (*Id*.) The RRM rejected the packet the same day because it was untimely. (*Id*.)

Petitioner asks the Court to order Bowers to: (1) accept his CARES Act application for consideration; (2) conduct an "immediate review" of the application considering only the factors in 28 C.F.R. Part 0; (3) use "time of sentence served" only to prioritize inmates for relief under the CARES Act, not to determine eligibility; and (4) use the "projection method" in applying his earned time credits under the FSA to determine his release date. (*Id*. at PageID 13.)

### III. ANALYSIS

The BOP has the sole authority to determine the place of an inmate's confinement. *See* 18 U.S.C. § 3621(b). The BOP also has the authority to permit an inmate to serve the end of a term of incarceration in a community correctional facility or residential reentry center, such as a halfway house, for a period not to exceed twelve months, or to place an inmate on home confinement for the shorter of ten percent of the term of imprisonment or six months. 18 U.S.C. § 3624(c)(1) and (2). That authority was expanded under the CARES Act, § 12003(b)(2), which provides:

> During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the

4

> Director of the Bureau [of Prisons] may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.

CARES Act, Pub. L. 116-136, Div. B., Title II, § 12003(b)(2).

On March 26, 2020, the Attorney General of the United States issued a Memorandum about prioritizing home confinement of current federal inmates *where appropriate* in response to the ongoing COVID-19 pandemic. *See* March 26, 2020 Memorandum from the Attorney General to the Director of BOP regarding "Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic," available at https://www.bop.gov/resources/news/pdfs/20200405_covid-19_home_confinement.pdf (last accessed June 15, 2024). The Memorandum directs the BOP to "prioritize the use of your various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic." *Id*. The Memorandum sets forth a non-exhaustive list of discretionary factors to be considered in assessing which inmates should be granted home confinement and directs the BOP to grant home confinement "based on the totality of the circumstances for each individual inmate." *Id*. at 1–2. Although the Memorandum encourages the use of home confinement as an alternative, it leaves the determination about whether home confinement is appropriate to the discretion of the BOP.

The CARES Act authorized the BOP Director "to place prisoners in home confinement only during the Act's covered emergency period and when the Attorney General finds that the emergency conditions are materially affecting BOP's functioning." *See* Home Confinement of Federal Prisoners After the COVID-19 Emergency, Slip Opinion for General Counsel, Federal Bureau of Prisons (https://www.justice.gov/sites/default/files/opinions/attachments/2021/01/17/2021-01-15-home-confine.pdf ) (last accessed June 15, 2024). On April 10, 2023, President

5

Biden signed a bipartisan congressional resolution to end the national COVID-19 emergency, and the CARES Act covered emergency period ended 30 days later. *See* CARES Act, § 12003(a)(2); *see also* https://www.congress.gov/bill/118th-congress/house-joint-resolution/7/text (last accessed June 12, 2024).

Petitioner attaches and relies on 28 C.F.R. Part 0, a Final Rule promulgated by the DOJ, effective May 4, 2023, affirming that the BOP Director has authority and discretion to allow prisoners placed in home confinement under the CARES Act to remain in home confinement after the expiration of the covered emergency period. (*See* ECF No. 1-10 at PageID 55–57.) This Final Rule is not applicable to Petitioner because he had not been placed on home confinement before the expiration of the COVID-19 emergency period. (*See id.* at PageID 57 ("[T]he department codifies the Director's discretion to allow inmates placed in home confinement pursuant to the CARES Act to remain in home confinement after the covered emergency period expires.").)

When addressing a request for home confinement under the CARES Act, the BOP uses its authority under 18 U.S.C. § 3624(c)(2) and 34 U.S.C. § 60541 to effect the Attorney General's directives. *Gould v. Warden, FCI Ashland*, No. CV 23-41-DLB, 2023 WL 2868001, at *1 (E.D. Ky. Apr. 10, 2023). The Court has no authority to grant release to home confinement. *See id.* ("This Court has no authority to override that decision or to order the BOP to place Petitioner on home confinement under the CARES Act.") (citations omitted); *see also* § 3621(b). A prisoner is not automatically entitled to or guaranteed placement on home confinement, even under the CARES Act. *See Gould*, 2023 WL 2868001, at *2; *see Dudley v. Beard*, No. CV 0:21-046-WOB, 2021 WL 2533030, at *4 (E.D. Ky. June 21, 2021). The BOP's placement decisions, including determinations about home confinement, are expressly insulated

6

from judicial review because the provisions of the Administrative Procedures Act do not apply to these decisions. *See Gould*, 2023 WL 2868001, at *2; *see also* 18 U.S.C. § 3625. "[T]he authority to grant home confinement remains solely with the Attorney General and the BOP." *United States v. Brummett*, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020); *see also United States v. Mattice*, No. 20-3668, 2020 WL 7587155, at *2 (6th Cir. Oct. 7, 2020) ("the BOP has sole discretion to transfer an inmate to home confinement").

Mays alleges a due process claim under the Fifth Amendment because he alleges that Respondent is arbitrarily withholding the protections of the CARES Act and the DOJ's Final Rule 28 C.F.R. Part 0. (*See* ECF No. 1 at PageID 7). Prisoners do not have a constitutionally protected right to home confinement. *Heard v. Quintana*, 184 F. Supp. 3d 515, 520 (E.D. Ky. 2016). The BOP has unfettered discretion to determine whether an inmate should be released on home confinement. Therefore, Petitioner has no liberty interest in early release for purposes of a due process claim. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983) (no liberty interest where decisionmaker has sole discretion over grant or denial of benefit); *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) (explaining that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence"); *see also Ortega v. U.S. Immigr. & Customs Enf't*, 737 F.3d 435, 438 (6th Cir. 2013) ("When an individual violates a criminal law and receives a sentence, he usually cannot be heard to complain about the deprivations of liberty that result.").

Mays also alleges an equal protection claim based on his awareness that "numerous inmates who also had not served over 50% of their sentence[s], nor were within 18 months of completing their sentence[s]," were released to home confinement under the CARES Act. (ECF No. 1 at PageID 9.) However, "the Fifth Amendment's Equal Protection Clause does not

prohibit the government from treating different groups of persons in different ways; it merely prohibits the government from doing so arbitrarily or for a legally-impermissible reason." *See Heard*, 184 F. Supp. 3d at 522.  Absent status as a "suspect" class member, a person seeking relief must demonstrate both that he was treated differently from others similarly situated and that the different treatment was not rationally related to a legitimate government interest. *Id.*

Although Mays generally alleges his awareness of people who were purportedly released to home confinement and names one individual, he fails to allege the individual facts showing that those inmates were similarly situated, especially considering that an inmate's qualification for home confinement is an individualized determination.  (*See* ECF No. 1 at PageID 9; *see also* ECF No. 16 at PageID 146.)

Mays also fails to demonstrate that there was no rational relation to a legitimate government interest in connection with the denial of the relief he sought.  On the contrary, home confinement decisions are rationally related to the legitimate government interest that the BOP be permitted to exercise its discretion when determining home confinement. *Heard*, 184 F. Supp. 3d at 523; *see also Matherly v. Andrews*, 859 F.3d 264, 282 (4th Cir. 2017) (recognizing that BOP has a legitimate interest in protecting the public from further criminal acts by inmates); *Hussain v. Warden Allenwood FCI*, No. 22-1604, 2023 WL 2643619, at *3 (3d Cir. Mar. 27, 2023) (stating that BOP has a legitimate interest in preventing any prisoner from fleeing while on home confinement); *Kachkar v. Jamison*, No. 3:20-CV-1941, 2021 WL 2383230, at *5 (M.D. Pa. June 10, 2021) (denying equal protection claim on home confinement where prisoner was not in a suspect class and because BOP must consider the "the totality of circumstances for each individual inmate").  Mays's equal protection claim is without merit.[2]

---

[2] Within his equal protection claim, Mays also alleges that the FCI Memphis SPC

Petitioner also argues that the BOP should be estopped from arguing that the § 2241 Petition should be denied because "Petitioner was late in submitting his CARES Act application." (ECF No. 1 at PageID 12.) As Respondent points out, however, in addition to denying Mays's request for home confinement as untimely, the BOP also denied it for a substantive reason: Mays did not otherwise meet the eligibility requirement of having served 50% of his statutory term with more than 18 months remaining to serve. (ECF No. 13 at PageID 120; *see* ECF No. 13-7 at PageID 138.) But even if the Court were to accept Petitioner's estoppel argument, the Court still has no authority to review the BOP's discretionary decision to reject his CARES Act application and cannot grant him any relief under § 2241. *See Brummett*, 2020 WL 5525871, at *2; *see also Gould*, 2023 WL 2868001, at *2.

The Court has no authority to order the BOP to place Mays on home confinement. *See Johnson v. Williams*, No. 4:20-CV-1325, 2020 WL 7324763, at *1 (N.D. Ohio Oct. 22, 2020) (dismissing § 2241 petition seeking home confinement). The Court also has no authority to order the BOP to grant or deny Petitioner's request. Because Mays has not demonstrated that

---

"calculate[ed] his release date incorrectly and differently from other similarly situated inmates in other BOP facilities"—though he fails to name the other inmates or facilities. (ECF No. 1 at PageID 10.) According to Petitioner, the allegedly improper calculation method used by the FCI Memphis SPC is different from the method used by other BOP facilities to calculate release dates. (*Id*.)

Mays asserts that the BOP should have calculated his release date by assuming that he would have earned all of his available FSA credits and used that calculated release date to determine how much of his sentence he served for purposes of determining his eligibility or priority for CARES Act placement. (*Id*.) His argument amounts to a disagreement with how the BOP facility at which he is imprisoned calculated his release date for purposes of his CARES Act eligibility. "Decisions regarding home confinement under the CARES Act . . . are reserved to the Bureau of Prisons" and are not subject to judicial review. *United States v. Mathews*, No. 21-1697, 2022 WL 1410979, at *3 (6th Cir. Apr. 4, 2022). Even if the Court were to address Mays's equal protection argument involving FSA credits, it would not provide a basis for habeas relief. As Bowers points out, "[t]he BOP applies FSA credits to all inmates—regardless of the assigned institution—in accordance with Program Statement 5410.01." (ECF No. 13 at PageID 120; *see* https://www.bop.gov/policy/progstat/5410.01_cn2.pdf (last accessed June 12, 2024).)

9

§ 2241 provides the relief requested, Respondent's Motion to Dismiss is **GRANTED**, and the § 2241 Petition is **DISMISSED** for lack of subject matter jurisdiction.

### IV. PETITIONER'S MOTIONS FOR A DEFAULT JUDGMENT & AN EXTENSION TO FILE A SUR-REPLY

Petitioner moved for a default judgment after Respondent failed to file a response to the § 2241 Petition by the deadline in the Court's order entered on September 19, 2023. (ECF No. 6.) Due to an error later discovered by the Clerk's Office, Respondent did not receive notification of the Court's order directing a response until January 10, 2024. Respondent then moved for an extension of time to file a response to the § 2241 Petition, which the Court granted. (ECF No. 11.) Because Respondent was never in default given the notification error, Petitioner's motion for a default judgment (ECF No. 6) is **DENIED.**

Petitioner also moved for an extension of time to file a sur-reply to Respondent's reply in support of the Motion to Dismiss. (ECF No. 21). Petitioner complained of delays in receiving legal mail at the FCI Memphis SPC, and he claimed that he never received Respondent's reply in support of the Motion to Dismiss. (*Id.* at PageID 177.) In a letter to the Court dated June 17, 2024, Petitioner reiterated his complaints and requested that a copy of Respondent's reply be sent to an alternate address at the FCI Memphis SPC. (ECF No. 22.)

On June 27, 2024, the Court ordered Respondent to serve Petitioner with a copy of Respondent's reply. (ECF No. 23.) The Court denied Petitioner's motion for an extension of time to file a sur-reply, but it granted Petitioner seven days from the date of receipt of Respondent's reply to file a motion seeking permission to file a sur-reply. (*Id.* at PageID 184.)

The same day, Respondent notified the Court that it had mailed a copy of the reply and the accompanying exhibits to the new address in Petitioner's letter on June 25, 2024. (ECF No. 24.)

10

As of the date of this order, Petitioner has not filed a motion seeking permission to file a sur-reply, and the time to do so has expired.

V.    **APPELLATE ISSUES**

A federal prisoner seeking relief under § 2241 need not obtain a certificate of appealability under 28 U.S.C. § 2253(c)(1) to challenge the denial of his petition. *See Witham v. United States*, 355 F.3d 501, 504 (6th Cir. 2004) (explaining that § 2253 "does not require a certificate of appealability for appeals from denials of relief in cases properly brought under § 2241, where detention is pursuant to federal process").

A habeas petitioner seeking to appeal must pay the filing fee required by 28 U.S.C. §§ 1913 and 1917.  To appeal *in forma pauperis* in a habeas case under § 2241, the petitioner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a).  *Kincade v. Sparkman*, 117 F.3d 949, 952 (6th Cir. 1997).  Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit.  Fed. R. App. P. 24(a)(1).  Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the petitioner must file his motion to proceed *in forma pauperis* in the appellate court.  *See* Fed. R. App. P. 24(a)(4)-(5).

In this case, because Petitioner is clearly not entitled to relief, the Court finds that any appeal would not be taken in good faith.  The Court therefore **CERTIFIES** under Rule 24(a) that

any appeal would not be taken in good faith and **DENIES** Petitioner leave to appeal *in forma pauperis*.[3]

      **IT IS SO ORDERED** this 16th day of July, 2024.

s/ Sheryl H. Lipman<br>
SHERYL H. LIPMAN<br>
CHIEF UNITED STATES DISTRICT JUDGE

---

[3] If Petitioner files a notice of appeal, he must also pay the full $605 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the United States Court of Appeals for the Sixth Circuit within thirty days.